Citation Nr: 1829344 
Decision Date: 05/30/18 Archive Date: 06/12/18

DOCKET NO. 09-23 723 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Hartford, Connecticut


THE ISSUE

Entitlement to compensation benefits pursuant to the provisions of 38 U.S.C. § 1151, for left foot disability claimed as nerve damage incurred as a result of surgical treatment at a VA Medical Center (VAMC) on August 27, 2004.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant




ATTORNEY FOR THE BOARD

Michael Sanford, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from November 1994 to July 1997. 

This appeal to the Board of Veterans' Appeals (Board) arose from a November 2008 rating decision in which the RO, inter alia, declined to reopen a claim for section 1151 compensation benefits for left foot nerve damage. The Veteran filed a notice of disagreement (NOD) in December 2008, and the RO issued a statement of the case (SOC) in June 2009. The Veteran filed a substantive appeal (via a VA Form 9, Appeal to Board of Veterans' Appeals) in July 2009.

In December 2009, the Veteran testified during a Board video-conference hearing before the undersigned Veterans Law Judge; a transcript of that hearing is of record.

In January 2010, the reopened the Veteran's claim for section 1151 compensation benefits and remanded the 1151 claim on the merits to the agency of original jurisdiction (AOJ) for further action, to include additional development of the evidence. After completing the requested development, the AOJ continued to deny the claim (as reflected in a March 2011 supplemental SOC (SSOC)) and returned the matter on appeal to the Board for further consideration.

In July 2014, September 2015 and June 2017, the Board additionally remanded the 1151 claim on appeal. The AOJ most recently continued to deny the claim on appeal in a January 2018 SSOC, and subsequently returned the matter to the Board for further consideration.

While the Veteran previously had a paper claims file, this appeal is now being processed utilizing the paperless, electronic Veterans Benefits Management System (VBMS) and Virtual VA (Legacy Content Manager) claims processing systems. All such records have been reviewed.


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate the claim herein decided have been accomplished.

2. The most probative and competent medical opinions to address the question of whether the Veteran has additional left foot disability resulting from VA treatment and due to carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, or an event not reasonably foreseeable in connection with surgical treatment at a VAMC on August 27, 2004, weigh against the claim.


CONCLUSION OF LAW

The criteria for compensation, pursuant to the provisions of 38 U.S.C. § 1151, for left foot disability as a result of surgical treatment at a VAMC on August 27, 2004, are not met. 38 U.S.C. §§ 1151, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.358, 3.361 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a).

After a complete or substantially complete application for benefits is received, notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b)).

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the AOJ. Id.; Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id.

In October 2007 and September 2008 pre-rating letters sent to the Veteran in connection with her claim, the AOJ provided notice to the Veteran explaining what information and evidence must be submitted by the appellant, and what information and evidence would be obtained by VA. This letter also provided the Veteran with general information pertaining to VA's assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman. 

The Veteran has not alleged or demonstrated any prejudice with regard to the content or timing of any notice provided. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, falls upon the party attacking the agency's determination); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The Board finds that VA satisfied its duty to notify the Veteran about the information and evidence needed to substantiate the claim adjudicated herein.

The record also reflects that, consistent with applicable duty-to-assist provisions, VA has made reasonable efforts to develop the Veteran's claim, to include obtaining or assisting in obtaining all relevant records and other evidence pertinent to the matter herein decided. Pertinent medical evidence associated with the claims file consists of service records; VA treatment records; and reports of VA examinations and opinions with private medical assessments. Also of record and consistent with the claim is the transcript of the Board hearing, along with written statements by the Veteran and by his representative on his behalf. The Board finds that no further AOJ action on this claim, prior to appellate consideration, is required. 

As noted, the Veteran had an opportunity to orally advance her contentions during a Board hearing. During the December 2009 Board hearing, the undersigned identified the claims on appeal, to include the claim herein decided. Moreover, with respect to this claim, information was elicited regarding the nature of the disability, current severity, and treatment. Although the undersigned did not explicitly suggest the submission of any specific additional evidence, on these facts, such omission was harmless. After the hearing, the Board sought further development of the claim, as the result of which additional evidence was subsequently added to the claims file. Thus, the hearing was legally sufficient. See 38 C.F.R. § 3.103(c)(2) (2017); Bryant v. Shinseki, 23 Vet. App. 488 (2010).

As indicated above, the Board last remanded this matter in June 2017. Pursuant to the remand, updated VA treatment records dated since April 2016 were obtained. Likewise, the Veteran was invited to identify any outstanding private medical records in a letter dated June 2017. The Veteran did not respond to that letter. Finally, an addendum medical opinion was rendered in January 2018. In that opinion, the examiner offered opinions as to whether it is at least as likely as not that each identified foot disability was a result of the Veteran's surgical treatment in August 2004. The examiner reviewed the record and commented on the private medical opinion of record. The record reflects that substantial compliance with the Board's June 2017 remand directives. See Stegall v. West, 11 Vet. App. 268 (1998). See also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) and Dyment v. West, 13 Vet. App. 141, 146-47 (1999) aff'd, Dyment v. Principi, 287 F.3d 1377 (2002) (holding that substantial, rather than strict, compliance is sufficient). 

As such, the Veteran is not prejudiced by the Board proceeding to a decision on this, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).


II. Analysis

The Veteran filed her claim for compensation under the provisions of 38 U.S.C § 1151 in 2004. The version of 38 U.S.C. § 1151 applicable to claims filed on or after October 1, 1997 provides that compensation shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service-connected. 38 U.S.C. § 1151.

A disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of a veteran's willful misconduct and (1) the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a VA (Department) employee or in a Department facility as defined in 38 U.S.C. § 1701(3)(A), and (2) the proximate cause of the disability or death was (a) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or (b) an event not reasonably foreseeable. Id.

The implementing regulation applicable to section 1151 claims received on or after October 1, 1997, is 38 C.F.R. § 3.361, which provides that, in order to determine whether a veteran has an additional disability, VA compares the veteran's condition immediately before the beginning of the hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy program upon which the claim is based to the veteran's condition after such care, treatment, examination, services, or program has stopped. VA considers each involved body part or system separately. 38 C.F.R. § 3.361(b).

To establish causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in a veteran's additional disability or death. Merely showing that a veteran received care, treatment, or examination and that the veteran has an additional disability or died does not establish cause. 38 C.F.R. § 3.361(c)(1).

Hospital care, medical or surgical treatment, or examination cannot cause the continuance or natural progress of a disease or injury for which the care, treatment, or examination was furnished unless VA's failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or natural progress. 38 C.F.R. § 3.361(c)(2).

To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a veteran's additional disability or death, it must be shown that the hospital care, medical or surgical treatment, or examination caused the veteran's additional disability or death as explained in 38 C.F.R. § 3.361(c) and that (1) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (2) VA furnished the hospital care, medical or surgical treatment, or examination without the veteran's or, in appropriate cases, the veteran's representative's informed consent. 38 C.F.R. § 3.361(d)(1).

Whether the proximate cause of a veteran's additional disability or death was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. 38 C.F.R. § 3.361(d)(2).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the United States Court of Appeals for Veterans Claims (Court) held that that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail. The Court has also stated, "It is clear that to deny a claim on its merits, the evidence must preponderate against the claim." Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert.

The Veteran underwent endoscopy plantar fasciotomy of the left foot on August 27, 2004. On August 29, she complained that her foot was still completely numb. On August 30, the incisions were intact and coapt; sutures were in place; she had palpable pulses bilateral and neurosensation was intact. In September 2004, she complained that she had more pain in her foot after the surgery than before the surgery. In October 2004, it was noted that she had likely lateral column disorder/cuboid syndrome. In November 2004, left lateral column instability and pain was noted as secondary to the surgery. In March 2005, she complained of pain along the lateral aspect of the left foot, but denied pain in the arch. A May 2005 MRI was negative for tendon pathology. In May 2005, she complained of burning pain along the sural nerve and the assessment was sural nerve entrapment and tarsal tunnel. However, an August 2005 EMG/NVC was negative for nerve damage.

In a July 2008 letter, Dr. J.M.D. opined that the Veteran had left foot nerve damage as a result of the August 2004 surgery and linked to the healing process after service.

The Veteran was afforded a VA examination in April 2010. There, the examiner identified the Veteran as having post-traumatic nerve syndrome status post the 2004 procedure at the VAMC. The examiner noted that the Veteran experienced sharp burning pains. The examiner concluded that it is likely that the neurological impairment constitutes and additional disability as a result of the 2004 surgical treatment at the VAMC. However, the examiner opined that it is not likely that the proximate cause of the post-traumatic nerve syndrome is the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA. The examiner explained that based on a review of the medical records, there was no indication that the VA physicians failed to exercise the degree of care that would be expected in providing surgical care or rehabilitation of the left foot.

In September 2014, the April 2010 VA examiner offered an addendum related to the Veteran's mild degenerative joint disease (DJD) changes between the cuboid and lateral cuneiform. The examiner opined that it is less likely than not that the mild DJD changes constitute additional disability incurred as a result of the August 2004 endoscopic plantar fasciotomy of the left foot, noting that degenerative changes reflect age related changes, which she further opined are less likely as not carelessness, negligence, or lack of proper skill, error in judgment, or similar instance of fault on the part of VA, and are at least as likely as not event not reasonably foreseeable.

As previously discussed in the June 2017 remand, an addendum opinion was rendered in August 2016. However, the authoring physician's assistant did not consider the standards pertaining to section 1151 claims, but rather she discussed whether the Veteran's left foot problems were related to military service. That August 2016 opinion is not germane to the issue before the Board as this appeal stems from a claim under section 1151.

As also noted in the June 2017 remand, the November 2016 addendum from the physician's assistant concluded that she could not provide an opinion without resorting to mere speculation. As such, this is neither evidence for or against the Veteran's claim.

On May 2016, Dr. E.D., a chiropractor, offered an opinion concluding that the Veteran's foot pain was as likely as not caused by her plantar fascitis surgery.

In January 2018, another addendum opinion was provided, this time by a physician. The physician identified the Veteran as having intermetatarsal bursitis involving the first, second and third spaces of the left foot, mild degenerative changes between the cuboid and lateral cuneiform of the left foot, and calcaneal heel spur of the left foot. The examiner opined that it was less likely than not that any of the identified disabilities constituted an additional disability incurred as a result of the August 2004 endoscopic plantar fasciotomy surgery. The examiner acknowledged Dr. E.D.'s opinion and noted that Dr. E.D. would not likely have expertise in the etiology of foot disabilities as Dr. E.D. is a chiropractor and, in any event, Dr. E.D. offered no rationale from which the examiner could comment on.

Regarding intermetatarsal bursitis involving the first, second and third spaces of the left foot, the examiner explained that review of the August 2004 operative report reveals that the surgery took place at the heel area of the left foot. The examiner explained that the metatarsal area would not be impacted by surgery at the heel. 

Regarding mild degenerative changes between the cuboid and lateral cuneiform of the left foot, the examiner explained that, similar to the bursitis, given that the surgery was at the site of the heel, such would not impact the area between the cuboid and lateral cuneiform as that area is located on the dorsal side of the foot, far from the heel.

Last, regarding the calcaneal spur of the left foot, the examiner stated that the August 2004 left foot X-ray, which was conducted prior to the surgery, revealed the calcaneal spur. Thus, the calcaneal spur was not a result of the surgery as it actually pre-existed the surgery, as shown on X-ray.

It is the responsibility of the Board to assess the credibility and weight to be given the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). The probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. See Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993).

When reviewing such medical opinions, the Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). However, the Board may not reject medical opinions based on its own medical judgment. Obert v. Brown, 5 Vet. App. 30 (1993); see also Colvin v. Derwinski, 1 Vet. App. 171 (1991). In assessing medical opinions, the failure of the physician to provide a basis for his opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000).

Initially, with respect to neurological disability , the April 2010 VA examiner explained that the Veteran did experience post-traumatic nerve syndrome following the 2004 surgery. However, the examiner explained that it is not likely that the proximate cause of the post-traumatic nerve syndrome is the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA. The examiner explained that based on a review of the medical records, there was no indication that the VA physicians failed to exercise the degree of care that would be expected in providing surgical care or rehabilitation of the left foot. The Board affords this opinion significant weight as the examiner offered a clear opinion, supported by rationale.

By comparison, the July 2008 letter from Dr. J.M.D. only specifies that the Veteran experienced some nerve problems due to the 2004 surgery. However, the April 2010 VA examiner also stated such. The relevant inquiry, after determining that the Veteran experienced some additional left foot problems (here, nerve damage), is whether the proximate cause of the disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination. Dr. J.M.D. offered no opinion as to whether the nerve damage was the result of any carelessness or other instance of fault during the 2004 surgery. As such, the July 2008 letter from Dr. J.M.D. is not relevant here and does not rebut the opinion of the April 2010 VA examiner.

Regarding a musculoskeletal disability, the September 2014 addendum offered that the mild DJD changes between the cuboid and lateral cuneiform was less likely an additional disability incurred as a result of the August 2004 endoscopic plantar fasciotomy of the left foot, noting that degenerative changes reflect age related changes. This opinion, too, is entitled to significant probative weight as the examiner provided a clear opinion supported by a reasoned rationale.

Further, the January 2018 addendum opinion is also entitled to probative weight. To that end, the examiner opinion that the Veteran's intermetatarsal bursitis involving the first, second and third spaces of the left foot, mild degenerative changes between the cuboid and lateral cuneiform of the left foot, and calcaneal heel spur of the left foot were not additional disabilities resulting from the 2004 surgery. As the examiner offered a clear rationale-namely that these disabilities are in different locations than where the surgery was performed or, in the case of the heel spur, pre-existed the surgery-the Board affords the opinions significant probative weight.

By contrast, in a May 2016 opinion, Dr. E.D concluded that the Veteran's foot pain was as likely as not caused by her plantar fascitis surgery. This opinion, however, is entitled to minimal probative weight as Dr. E.D. offered no rationale to support his bare conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (a medical opinion must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two); see also Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007) (a medical opinion "must support its conclusions with an analysis that the Board can consider and weigh against contrary opinions"). 

Thus, the weight of the competent, probative evidence is against the claim. Regarding a neurological disability, the most probative opinion (the April 2010 VA examiner's opinion) shows that while the Veteran did sustain post-traumatic nerve syndrome following the 2004 surgery, it was less likely than not that the proximate cause of the post-traumatic nerve disorder was the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA. The examiner explained that based on a review of the medical records, there was no indication that the VA physicians failed to exercise the degree of care that would be expected in providing surgical care or rehabilitation of the left foot. Regarding a musculoskeletal disability, the most probative evidence (the September 2014 and January 2018 addendum opinions) weighs against a finding that any musculoskeletal disability was incurred as a result of the 2004 surgery.

In additional to the medical opinion evidence discussed above, the Board has considered the Veteran's own assertions. However, to the extent that she attempts to establish, by her own lay assertions, that a nerve disability was proximately due to carelessness or some other instance of fault during the 2004 surgery and/or that she sustained an additional musculoskeletal disability as a result of the surgery, such attempt must fail. The matters of diagnosis and etiology of the complex disabilities here at issue are based on internal processes not observable or otherwise perceived through the senses; hence, questions of diagnosis and etiology of such disabilities are only within the province of individuals with special knowledge, training, and experience. See, e.g., Jandreau v. Nicholson, 492 F.3d 1372, 1377, n. 4 (Fed. Cir. 2007) (holding that while the Veteran can attest to having a broken leg, he is not competent to diagnosis cancer). As the Veteran is simply not shown to have such special knowledge, training, and experience, her assertions in this regard are not competent, and hence, not probative. As such, the Veteran can neither support the claim, nor counter the probative medical opinion evidence, on the basis of his own assertions.

For all the foregoing reasons, the Board finds that the claim for compensation under 38 U.S.C. § 1151 for left foot disability must be denied. In reaching the conclusion to deny the claim, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, supra.



ORDER

The claim for compensation benefits, pursuant to the provisions of 38 U.S.C. § 1151, for left foot disability claimed as nerve damage incurred as a result of surgical treatment at a VAMC on August 27, 2004, is denied.




____________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs